NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0062n.06

Case No. 25-1346

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>JACQUELINE MEADOWS,</td><td>)</td><td></td></tr>
<tr><td>Plaintiff - Appellant,</td><td>)<br>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td>v.</td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE EASTERN DISTRICT OF</td></tr>
<tr><td>DELTA AIR LINES, INC., CHRISTIAN</td><td>)</td><td>MICHIGAN</td></tr>
<tr><td>GUNN, PETER SABALLA-DAVIS,</td><td>)</td><td></td></tr>
<tr><td>Defendants - Appellees.</td><td>)</td><td>OPINION</td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**FILED**
Jan 29, 2026
KELLY L. STEPHENS, Clerk

Before: GIBBONS, LARSEN, and MURPHY, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-Appellant Jacqueline Meadows appeals the district court's grant of summary judgment to Defendants-Appellees Delta Air Lines, Christian Gunn, and Peter Saballa-Davis. Meadows sued the defendants under both federal and state law, alleging that they engaged in race discrimination in violation of Title VII and the Michigan Elliott-Larsen Civil Rights Act through the discipline she received following a workplace incident with another Delta flight attendant. For the reasons discussed below, we affirm the district court's grant of the defendants' motion for summary judgment on Meadows's claims.

## I.

Jacqueline Meadows began a full-time position with Northwest Airlines in 1989 before later becoming a Delta employee when the two airlines merged in 2008. At the time of the discipline giving rise to Meadows's lawsuit, she was a "purser-qualified" flight attendant, meaning she was the "on-board leader[]" in charge of the cabin on flights that she worked. DE 25-2,

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

Meadows Dep., Page ID 198; DE 25-3, Purser Policy, Page ID 266.  During the same time period, Meadows also served as a reserve officer for the Detroit Police, a position she began in July 2017. As a reserve officer, Meadows's duties included providing support to the sworn officers and conducting patrols.  Meadows made her employment as a reserve officer known to her colleagues at Delta.

### A.  October 7, 2019 Incident

On October 7, 2019, Meadows was working as the flight leader on Delta Flight 2880, a round-trip flight from Detroit to Orlando.  Other than Meadows, the crew for that flight consisted of flight attendants Lynette Marshall, Taylor Ramone, Kristin Moore, and a fourth, unidentified attendant.  No issues arose on the first leg of the trip from Detroit to Orlando.  Upon the flight's arrival in Orlando, Delta policy required that a minimum crew of flight attendants stay onboard the aircraft until all passengers deplaned; in this case, this meant all five flight attendants needed to remain on the aircraft.  However, Meadows exited the aircraft prior to all passengers deplaning to assist a passenger with a wheelchair.[1]  After assisting the passenger exit the plane, Meadows briefly spoke on the phone with her father to discuss her mother, who at that time was in the hospital, while she was still on the jetway and before she reentered the aircraft.  Because Meadows apparently did not remain on the aircraft until all passengers deplaned, she was not present when flight attendant Marshall went to the front of the plane to let her know that the safety check had been completed.

As Meadows re-boarded the aircraft, Marshall, who was sitting in an exit row near the aircraft door, told Meadows that she should not have deplaned while passengers were still onboard.

---

[1] Meadows maintains that she did not commit a minimum crew violation in this case because Delta policy states that all flight attendants must remain on board until all passengers deplane unless they are performing certain tasks, including "checking on [the] status of [a] wheelchair, or other special assistance [at the] passenger's request."  DE 25-2, Meadows Dep., Page ID 208.

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

Meadows informed Marshall that she had been assisting a passenger with a wheelchair and was also retrieving paperwork needed for their return flight. At some point during this exchange, Marshall stood up from the exit row where she was seated, allegedly prompting Meadows to tell Marshall that if she "took another step, she would take [Marshall] down." DE 25-6, Marshall Dep., Page ID 306; DE 25-7, Marshall SRS Report, Page ID 317; DE 25-8, Mohammed Decl., Page ID 320. Marshall stated that she interpreted this comment to be a threat because she was aware that Meadows also worked as a reserve officer for the Detroit Police. Meadows concedes that she told Marshall to "back away," but denies telling Marshall that she would "take [her] down" and maintains that when Marshall came towards her, she walked away. DE 25-2, Meadows Dep., Page ID 210. Captain Patrick B. Cooney, who served as the captain of Flight 2880 and witnessed part of the interaction between Meadows and Marshall, later stated that Marshall "proceeded to yell at [Meadows] in a totally unprofessional manner" and was "relentless in verbally attacking [Meadows] and creating a scene." DE 32-1, Cooney Statement, Page ID 794. Captain Cooney acknowledged that he did not know the circumstances that led to the interaction between Meadows and Marshall but maintained that Meadows "responded to this event in a completely professional manner." *Id.*

Both Meadows and Marshall agreed that they could work together on the return flight from Orlando to Detroit. Before the plane departed, however, Marshall contacted Delta's Operations and Customer Center ("OCC"), reported the incident, and requested that a manager come meet the crew in Orlando. Also during this time, Meadows texted her managers Renee Mullen and Steven Jones to inform them that she had been "verbally assaulted" by Marshall. DE 25-2, Meadows Dep., Page ID 214. In response to Marshall's OCC report, Field Service Manager ("FSM") Neil Mohammed met the aircraft while it was in Orlando. FSM Mohammed stated that Meadows

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

acknowledged during his interview with her that she indeed told Marshall that she would "take her down." DE 25-8, Mohammed Decl., Page ID 320. FSM Mohammed prepared a summary of his conversations with Meadows, Marshall, and Captain Cooney, and sent that summary to each flight attendants' FSM in Detroit.

### B. Delta's Investigation & Determination Regarding the October 7 Incident

Upon their return to Detroit, FSMs Austin Lynch and John Arila met the aircraft and interviewed the flight crew regarding the incident in Orlando. FSM Lynch and FSM Arila prepared a short, combined incident report and did not participate further in the investigation.

Within twenty-four hours of the incident, Marshall disclosed her interaction with Meadows to Delta through an "SRS report," a safety reporting system that Delta utilized for reporting incidents involving safety or security. DE 25-6, Marshall Dep., Page ID 305; DE 25-7, Marshall SRS Report, Page ID 315–17. The day after the incident occurred, Meadows discussed the events with her manager FSM Renee Mullen, who instructed Meadows to submit a statement. Meadows e-mailed a statement that same day to Courtney Ebert, the Human Resources manager for Delta's Detroit base. Shortly thereafter, Meadows also submitted a request to appellee Peter Saballa-Davis that she be assigned an FSM other than FSM Mullen, as she felt FSM Mullen was being insensitive regarding the incident. Saballa-Davis complied and assigned appellee Christian Gunn to be Meadows's new FSM. Because Meadows was transferred to FSM Gunn's team, he took over the investigation into the October 7 incident from FSM Mullen. After reviewing all of the documents collected in the investigation, including witness statement affidavits, FSM Gunn recommended that both Meadows and Marshall receive formal verbal coaching.

Delta's Workplace Violence Policy ("WPV Policy") prohibits employees from making threats of violence towards one another, which includes the actual physical contact or its threat.

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

FSM Gunn's recommendation stated that he did not believe that Meadows violated Delta's WPV Policy because he construed her "I will take you down" comment as a defensive stance in response to Marshall's instigation of the conflict. However, the Workplace Violence Committee ("WPV Committee") maintained final authority to determine whether a violation of the Delta WPV Policy occurred. On January 13, 2020, the WPV Committee reviewed the October 7 incident, as presented by Detroit Base Manager Kara Vanneman and FSM Gunn, and supported by HR Manager Ebert. After reviewing all of the evidence, the Committee determined that Meadows's "I will take you down" statement constituted a verbal threat and therefore violated the WPV Policy. The WPV Committee further concluded that Meadows failed to de-escalate the situation as part of her duties as flight leader.

Because of its findings, The WPV Committee recommended that Meadows receive a Final Corrective Action Notice ("FCAN"). An FCAN may be issued to an employee who "commits an infraction Delta considers serious enough to warrant a higher level of discipline," and it remains in the employee's file for "36 months or until the most recent written Performance Development expires." DE 25-20, IFS Performance Development Policy, Page ID 390. Neither Meadows's nor Marshall's race was disclosed during the WPV Committee meeting discussing the incident. As for Marshall, the WPV Committee did not find that her conduct violated the WPV Policy but did determine that it was inappropriate and violated the standards set forth in Delta's Rules of the Road and the Way We Fly. As a result, Delta issued a Written Coaching to Marshall.

On February 27, 2020, the WPV Committee conducted a follow-up meeting at the request of Corporate Director Claudine Rydstrand, who was not present at the original WPV Committee meeting finding Meadows had violated the WPV Policy. Director Rydstrand wanted to ensure that the WPV Committee had considered that Meadows was under stress at the time of the October

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

7 incident because her mother was ill, and that Meadows had since denied making the "I will take you down" statement.  At the follow-up meeting, the WPV Committee also received and considered for the first time Captain Cooney's statement regarding the incident, which maintained that Marshall instigated the conflict, and that Meadows responded professionally.  The WPV Committee ultimately adhered to its original determination and recommendation that Meadows receive an FCAN, finding that Cooney's statement did not change its decision because he was not present when Meadows allegedly made the infringing comment.  Delta leadership in Detroit ultimately adopted the WPV Committee's determination and accepted its recommendation.

On April 29, 2020, Saballa-Davis informed Meadows of her FCAN during a telephone call. As a result of her FCAN, Delta would remove Meadows from her purser position for 36 months. Meadows proceeded to contact Director Rydstrand, seeking to overturn her discipline; she also reached out to other Delta leaders during this time.  Meadows submitted a statement to Director Rydstrand which expressed her belief that she had "experienced racism, bullying and sexism on the workplace" as a result of the October 7 incident and the way its investigation was handled by Delta leaders.  DE 33-4, Meadows Statement, Page ID 1191–92.  On August 26, 2020, Director Rydstrand and Senior HR Manager Terrence Jackson met with Meadows in person.  At that meeting, Meadows continued to deny making the "I will take you down" comment to Marshall and disputed FSM Mohammed's report that she confirmed making the comment to him.  In response, Director Rydstrand and HR Manager Jackson contacted FSM Mohammed, who confirmed once again that Meadows admitted making the statement to him following the incident.

Following her conversation with FSM Mohammed, Director Rydstrand decided to uphold the WPV Committee's recommendation for an FCAN.  Meadows remained in the purser program

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

until November 2020 and was still employed as a flight attendant with Delta when she brought the underlying lawsuit.

### C. The Instant Suit

On June 8, 2022, Meadows sued Delta, Saballa-Davis, and Gunn, alleging intentional race discrimination in violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act ("Elliott-Larsen Act"). She properly exhausted her claims first with the United States Equal Employment Opportunity Commission ("EEOC").

The defendants filed a motion seeking summary judgment, requesting dismissal of Meadows's claims. The district court granted the defendants' motion on March 17, 2025, finding that Meadows failed to raise a genuine issue of material fact to overcome the defendants' legitimate, non-discriminatory reason for her discipline.

Meadows timely appealed the district court's order to our court on April 9, 2025.

### II.

We review a district court's grant of summary judgment de novo. *Schleicher v. Preferred Sols., Inc.*, 831 F.3d 746, 752 (6th Cir. 2016). Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 700 (6th Cir. 2007). On the other hand, summary judgment is inappropriate when the evidence raises a genuine issue of material fact such that a reasonable jury could return a verdict for the nonmoving party. *Clay*, 501 F.3d at 700. "We draw all inferences in the light most favorable to the non-moving party" when conducting our analysis. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018). However, the nonmoving party must present "significant

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

probative" evidence in support of its position to defeat summary judgment. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (citation modified).

### III.

Meadows brings two claims of intentional race discrimination against Delta, Saballa-Davis, and Gunn: one under Title VII and one under Michigan's Elliott-Larsen Act. We first analyze her claims against the individual defendants before turning to the claims against Delta.

### A.  Individual Claims Against Saballa-Davis and Gunn

As a threshold matter, we must first address the fact that Meadows does not raise the issue of her individual claims against Saballa-Davis and Gunn on appeal. We recognize that "'[a]n appellant abandons all issues not raised and argued in its initial brief on appeal.'" *Guilmette v. Howes*, 624 F.3d 286, 292 (6th Cir. 2010) (en banc) (alteration in original) (quoting *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006)). Meadows appears, at best, to merely reference claims concerning Saballa-Davis and Gunn by consistently referring to the "Defendants" altogether throughout her briefing. *See* CA6 R. 27, Appellant Br., at 30–47; CA6 R. 34, Reply Br., at 4–11. However, Meadows may not refer to her claims involving Saballa-Davis and Gunn "in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Johnson*, 440 F.3d at 846 (citation modified). Meadows therefore abandons her arguments against the individual defendants on appeal.

We find further support that Meadows abandoned these claims in the fact that she also failed to address the arguments set forth by the individual defendants regarding their individual liability in her summary judgment briefing before the district court. And where a litigant fails to address a claim in response to a motion for summary judgment, as well as in their briefing on appeal, we deem that claim abandoned. *See Nathan v. Great Lakes Water Auth.*, 992 F.3d 557,

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

564 n.1 (6th Cir. 2021); *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023).   We therefore find that Meadows has discarded her claims against Saballa-Davis and Gunn twice over and thus decline to reach the merits now.

### B.  Claims Against Delta

We evaluate claims of race discrimination brought under Title VII and the Elliott-Larsen Act under the same standard.  *Rogers*, 897 F.3d at 771; *see also Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014); *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652 (6th Cir. 2012).

Claims of intentional discrimination brought under Title VII can be proven through direct or circumstantial evidence.  *Ondricko*, 689 F.3d at 648–49.  "Direct evidence, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Shazor v. Pro. Transit Mgmt., Ltd.*, 744 F.3d 948, 955 (6th Cir. 2014) (quoting *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006)).  Where direct evidence is present, the jury need not draw any inferences to conclude that prejudice against members of a protected group motivated, at least in part, a challenged employment action.  *Id.*  Where there is no direct evidence and instead only circumstantial, a plaintiff's claim is analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).  Under *McDonnell Douglas*, the burden resides first with the plaintiff to show a prima facie case of race discrimination.  *Id.*  If the plaintiff successfully proves their prima facie case, the burden then shifts to the employer to provide a "legitimate, non-discriminatory explanation for its actions."  *Id.*  If the employer provides such explanation, the burden then shifts back to the plaintiff to show pretext; meaning, that the employer's explanation was merely fabricated to hide an illegal motive.  *Id.*

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

Here, the parties dispute the third step of the *McDonnell Douglas* framework: whether Meadows met her burden of proving that Delta's explanation for issuing her FCAN was merely pretext.[2]  Meadows can create a triable issue of fact over whether her discipline was pretextual if she establishes, by a preponderance of the evidence, one of three things: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge."  *Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004).  Meadows asserts that each of these showings for pretext are present in her case.  We disagree.

First, Meadows fails to show that Delta's proffered reason for issuing her FCAN had no basis in fact.  The evidence demonstrates that Meadows received her FCAN due to the "I will take you down" comment she made to Marshall, which the WPV Committee found to violate the WPV Policy.  Indeed, Delta leadership involved with the case understood that Meadows was disciplined because she violated the WPV Policy.  Marshall disclosed Meadows's comment in the SRS report she submitted within twenty-four hours of the incident, to FSM Mohammed when he met the flight in Orlando following Marshall's request to OCC, and to OCC when she made the initial report requesting an FSM come speak to the flight crew.  Shortly after the incident occurred, Meadows herself confirmed to FSM Mohammed that she made the comment, FSM Mohammed reported the comment, and he later confirmed to Delta leadership that Meadows made the comment after

---

[2] Although Meadows also maintains that she properly established a prima facie case of race discrimination, the appellees do not fully dispute whether Meadows properly met her burden of establishing a prima facie case.  As a result, we do not find that whether Meadows met her prima facie burden to be at issue in this appeal.  *See Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 675 (6th Cir. 2008) ("The first factor [of the pretext analysis] is not at issue because there is no dispute that [the plaintiff] set off firecrackers while working on March 22, 2006, and that this was the proffered reason for his discharge."); *Terre v. Hopson*, 708 F. App'x 221, 228 (6th Cir. 2017) (discussing a prima facie case of employment discrimination under the ADA).  However, even if Meadows did properly establish a prima facie case, that conclusion would not be dispositive because (as we discuss in this opinion) she does not properly establish pretext.  *McDonnell Douglas*, 411 U.S. at 802−04; *Chen*, 580 F.3d at 400.

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

Meadows subsequently denied doing so.  Ultimately, even if a dispute of fact exists over whether the statement happened, Delta leadership at least held an "honest belief" that Meadows made the statement.  *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). So, we certainly cannot say that it was not the source of Meadows's discipline.  Accordingly, we find Delta's reason for issuing Meadows her FCAN had a basis in fact because it was grounded in Delta's honest belief.

Second, Meadows fails to show that Delta's proffered reason did not actually motivate its issuance of her FCAN.  Delta leadership explicitly confirmed that Meadows's FCAN was issued because of her violation of the WPV Policy.  There is no evidence that Meadows's race was known in any way by the WPV Committee, much less a factor in their decision regarding her discipline following the October 7 incident.  In fact, Delta leadership confirmed that it is standard practice to ensure that the WPV Committee does not know the race of the employees involved in a potential violation of the WPV Policy.  Meadows does not present evidence that convinces us to conclude the Committee impermissibly made an exception in her case.

Third, Meadows fails to show that Delta's reason for her discipline was insufficient.  Delta maintains a zero-tolerance policy against violence in the workplace.  That policy prohibits employees from making threats of violence towards one another, including actual or threat of physical contact.  Here, Delta determined that Meadows's "I will take you down" comment was a violation of their WPV Policy and issued her discipline as a result.  A showing that an employer's proffered reasoning was insufficient ordinarily involves evidence that other employees, specifically those not in the protected class, were not punished even though they engaged in essentially the same conduct that motivated punishment of the plaintiff.  *See Hedrick*, 355 F.3d at 460.  Meadows does not present such evidence here.  There are no allegations that Delta also

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

believed Marshall to have violated the WPV Policy but refrained from also issuing her an FCAN. In fact, the evidence shows that Delta determined that Marshall did not violate the WPV Policy and instead received appropriate discipline for the Delta policy violations that she did commit. We therefore decline to find that Delta's justification for Meadows's FCAN was insufficient.

Meadows also asserts that she suffered disparate treatment based on her race as evidenced by the appellees' failure to investigate her complaint of discrimination. Specifically, she contends that the failure to follow up on the statement she shared with Director Rydstrand, in which she stated that she felt she had suffered discrimination due to her race, constituted disparate treatment. However, the evidence before us does not support her argument. After receiving Meadows's statement, Director Rydstrand and Senior HR Manager Terrence Jackson met with Meadows in person. Following that meeting, Director Rydstrand and HR Manager Jackson contacted FSM Mohammed, who confirmed that Meadows admitted making the "I will take you down" statement during his interview with her in Orlando. And it was after that conversation that Director Rydstrand decided to uphold the WPV Committee's recommendation. Thus, the record shows that Delta did investigate Meadows's complaint that she received unfair treatment. And even if we found that Delta failed to investigate Meadows's complaint, Meadows fails to present any evidence that her race was the reason, or at least one of the reasons, for the alleged failure. *See Wright*, 455 F.3d at 711 (confirming that disparate treatment claims brought under Title VII require allegations that an employment decision was motivated, either in whole or in part, by an illegitimate reason).

\*\*\*\*

Finally, we address the arguments Meadows makes regarding the evidence submitted in this case. Specifically, Meadows argues that the district court should have struck the appellees'

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

references to the findings of the WPV Committee because the deposition of Christian Terry, who testified as to the findings of the Committee, did not comply with Federal Rule of Civil Procedure 30(b)(6). We interpret this argument as one essentially claiming that Meadows was not able to conduct adequate discovery due to alleged deficiencies in Terry's deposition, and therefore the district court should not have granted summary judgment. In order to have properly preserved this argument for our review, Meadows should have submitted an affidavit to the district court specifying the reasons she could not present facts essential to justify her opposition to the appellees' motion for summary judgment because of the defects in Terry's deposition. *See Vance ex rel. Hammons v. United States*, 90 F.3d 1145, 1148–49 (6th Cir. 1996); *United States v. Rohner*, 634 F. App'x 495, 504 (6th Cir. 2015) (quoting Fed. R. Civ. P. 56(d)). But she failed to do so and instead raised the issue for the first time in her opposition to appellees' motion for summary judgment without any "specific objections or statements to the district court that additional discovery was required." *Unan v. Lyon*, 853 F.3d 279, 292 (6th Cir. 2017). Consequently, this issue is inappropriate for our review. *See Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 544 (6th Cir. 1996) (a party's failure to raise the "discovery . . . issue in the district court precludes [that] argument . . . on appeal").

We find Meadows's claim finding issue with the lack of a "documented finding" by the WPV Committee in her personnel file similarly unavailing. CA6 R. 27, Appellant Br., at 31–32. Delta produced the WPV Committee's findings through its issuance of Meadows's FCAN. Several members of Delta leadership testified as to the issuance of the FCAN and the reasoning behind it. The breadth of testimony taken and submitted by both parties in this case included depositions and/or statements from those directly involved in the WPV Committee proceedings. Thus, the thrust of Meadows's argument for this claim, that the appellees are attempting to

No. 25-1346, *Meadows v. Delta Air Lines, Inc., et al.*

"backdoor evidence," is without merit. *Id.* at 31. Indeed, Meadows had the FCAN herself from the very beginning of this litigation, as she attached it to her Complaint.[3]

**\*\*\*\***

To discriminate under Title VII means, in the simplest terms, to treat similarly situated individuals differently on the basis of a protected characteristic. *Threat v. City of Cleveland*, 6 F.4th 672, 677 (6th Cir. 2021). At bottom, Meadows fails to convince us that she received different treatment than Marshall, or any other Delta flight attendants outside of her protected class, for the same conduct because of her race. *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 348 (6th Cir. 2012) ("[Plaintiff] bears the burden of proving that white employees, similar in all of the *relevant* aspects of employment, were not similarly disciplined." (citation modified) (emphasis in original)). And since we cannot say "yes" to "the ultimate question . . . [of] whether the plaintiff was the victim of intentional discrimination," we find that Meadows's claims fail under Title VII and the Elliott-Larsen Act. *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (citation modified).

## IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendants.

---

[3] It is for these same reasons that we find Meadows's argument concerning Michigan's Bullard-Plawecki Act unpersuasive. Meadows argues that because no finding of the WPV Committee was put in her personnel file, the findings cannot be used against her in this litigation. Meadows does not provide the personnel record that apparently excluded any findings of the WPV Committee. Regardless, the Bullard-Plawecki Act does not preclude the use of personnel record information where that information was not intentionally excluded, and the employee has been given a reasonable time to review the information. M.C.L. § 423.502. Meadows does not attempt to argue that Delta purposely excluded any records of the WPV Committees' findings, and her attachment of her FCAN to the Complaint clearly evinces that she has had access to a recorded finding of the Committee for her review for some time.